SUMMONS ISSUED
CV-11 3785
ORIGINAL
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 04 2011 ★
LONG ISLAND OFFICE
BIANCO, J.
BOYLE, M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EDWARD D. WAHL,

           Plaintiff,

- against -

ERIC HOLDER, ATTORNEY GENERAL OF
THE UNITED STATES, AKAL SECURITY, INC.,
UNITED STATES MARSHAL SERVICE,

           Defendants.

---

DOCKET NO.:

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff EDWARD D. WAHL, by and through his attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON, as and for his complaint against the defendants, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action seeking monetary relief, injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements, costs and fees, pursuant to 31 U.S.C.A. §§3729 and 3730, for violations of public policy, breach of contract, interference with contractual relations, breach of covenant of good faith and fair dealing, fraud, negligence.

2. Specifically, the Plaintiff alleges that the Defendants wantonly, recklessly, knowingly and purposefully, acting individually and in conspiracy with each other, sought to cause Plaintiff to rely on their promise to reinstate Plaintiff to his former job and employment status pursuant to the binding arbitration award of July 14, 2008. In violation of the Collective Bargaining Agreement between AKAL SECURITY, INC. and the Association of Court Security Officers of New York ("ASCONY") dated June 3, 2003 ("CBA") to abide by the arbitrator's decision, Defendants denied

Plaintiff his job and employment status. The United States Marshal Service knowingly submitted and relied upon fraudulent documents so as to deny Plaintiff employment, in violation of his rights. Erroneous, negligently prepared reports stated Plaintiff was ineligible to be reinstated to his prior employment for failing to pass a background check. Subsequently, Plaintiff passed a background check and was approved for a different position with the United States Marshal service.

3. Said acts were done knowingly with the consent and condonation of ERIC HOLDER, ATTORNEY GENERAL OF THE UNITED STATES, AKAL SECURITY, INC., and UNITED STATES MARSHAL SERVICE with the intended, negligent and expressed purposes of violating the CBA. Said activity was known to government and policy makers and was accepted and supported as policy, practice and custom. Defendants are liable for damages, pursuant to 31 U.S.C.A. § 3729, in that they knowingly presented a false or fraudulent claim for approval. Private parties may bring suit for violations of 31 U.S.C.A. § 3729 pursuant to 31 U.S.C.A. § 3730.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1332 and 1346.

5. The exercise of pendant jurisdiction by this court is appropriate in this matter with respect to Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Plaintiff resides in the County of Nassau and the place where the breach of contract and fiduciary duties complained of herein occurred in the County of Suffolk.

## THE PARTIES

7. Plaintiff Edward D. Wahl was at all relevant times a citizen of the United States and

a resident of Nassau County, New York. Mr. Wahl was formerly employed by AKAL SECURITY, INC.

8. Defendant AKAL SECURITY, INC. ("AKAL") is a New Mexico corporation that had a contract with the UNITED STATES MARSHALS SERVICE to supply Court Security Officers ("CSO") at Federal court house buildings throughout the United States, including the Federal courthouse building in Central Islip, New York.

9. Defendant ERIC HOLDER, in his official capacity is the Attorney General of the United States. The UNITED STATES MARSHAL SERVICE is an agency that is under the official supervision and control of the Attorney General of the United States. The UNITED STATES MARSHAL SERVICE and ERIC HOLDER exercised joint supervision, control and authority of the CSOs, including plaintiff..

## **FACTUAL ALLEGATIONS**

10. Plaintiff Edward D. Wahl was discharged by letter dated November 22, 2005 from his employment at Akal Security, Inc. (Akal), a contract security corporation that provides court security officers to the United States Marshal Service (USMS) at various courthouse locations in over 40 states. Plaintiff had been employed with Defendant Akal for approximately five (5) years as a part-time Court Security Officer (CSO) prior to his dismissal. Plaintiff's job location was at the Eastern District of the United States District Court of the Eastern District of New York located in Long Island, New York.

11. Prior to being discharged, Plaintiff was a member of ASCONY. Previously, ASCONY had entered into a collective bargaining agreement (CBA) with AKAL, which covered the terms and conditions of employment of the member of the bargaining unit.

12. In a letter dated October 20, 2005, AKAL initiated the disciplinary process against Plaintiff Wahl by informing him that he violated the corporation's performance standards when Plaintiff had allegedly revealed to Lucy Desinor, an employee of the United States Attorney for the Eastern District of New York in the Garden City office, that she was rumored to be using illicit drugs and that she was under surveillance.

13. Pursuant to the CBA, the parties agreed to and entered into the arbitration process on March 29, 2007, September 5-6, 2007.

14. The arbitrator issued the Arbitrator's Opinion & Award on July 14, 2008 stating Plaintiff Wahl was not discharged for just cause, that Plaintiff Wahl was not guilty of violating performance standards C13 and C1; that Plaintiff Wahl was guilty of violating performance standard C8; and that AKAL shall reinstate Plaintiff Wahl to his prior position without backpay no later than July 31, 2008.

15. On March 29, 2007, the Association of Court Security Officers of New York ("ASCONY"), on behalf of Plaintiff EDWARD D. WAHL ("Mr. Wahl"), engaged in binding arbitration before David N. Stein, Esq., Impartial Arbitrator ("the Arbitrator"), pursuant to its collective bargaining agreement with Defendant AKAL Security, Inc. ("AKAL"). The purpose of the arbitration was to resolve the grievance against AKAL, contesting its dismissal of Edward Wahl as a Court Security Officer (CSO) by letter dated November 22, 2005. Two subsequent arbitration hearings with respect to the same issue took place on September 5 & 6, 2007.

16. On July 14, 2008, the Arbitrator issued an Arbitrator's Opinion and Award (the "Arbitrator's Award"), granting in part and denying in part Mr. Wahl's grievance. The Arbitrator's Award stated, in pertinent part, that 1) Mr. Wahl was not discharged for good cause; 2) the

4

investigation conducted by AKAL was "flawed, inaccurate, and unfair...predicated on speculation and exaggeration"; 3) Mr. Wahl is not guilty of violating performance standards C13 and C21, and his employment record and history shall reflect the deletion of any reference to violations of performance; 4) Mr. Wahl is guilty of violating performance standard C8; 5) AKAL, its successors and assigns, shall reduce its discharge of Mr. Wahl to a written reprimand for violating performance standard C8; and 6) AKAL shall offer Mr. Wahl reinstatement to his position without backpay no later than July 31, 2008 and place him on his former shift and location unless otherwise agreed by AKAL and the Union. The Arbitrator's Award further stated "Mr. Wahl shall be entitled to pay from AKAL, its successors or assigns, if any, as of July 31, 2008, without any further obligation to mitigate damages. In addition, AKAL, its successors or assigns, if any, shall credit Mr. Wahl with seniority, service credit and entitlement to increase in salary rates retroactive to the date of his discharge." From the date of the Arbitrator's Award to the present, AKAL has failed to perform any of its duty and/or obligations pursuant to the Arbitrator's Award.

17. On July 31, 2008, Mr. Wahl presented himself for work as a CSO to the Federal court house in Central Islip, New York (his place of employment) prepared to perform his duties. Lead CSO Robert Seimer ("Mr. Seimer") stated to Mr. Wahl that he had not received any direction from his supervisors in Brooklyn, New York and had not been notified that the Arbitrator's Award had been rendered. Mr. Seimer requested a copy of the Arbitrator's Award for the purpose of sending it by facsimile to his supervisors in Brooklyn, New York. Mr. Wahl provided Mr. Seimer with a copy. Subsequently, Mr. Seimer informed Mr. Wahl that Acting Site Supervisor Joe Francis ("Mr. Francis") stated Mr. Wahl would not be allowed to work despite having actual notice of the Arbitrator's Award.

18. On July 31, 2008, Mr. Wahl received a copy of a document entitled, "AKAL SECURITY ASSIGNED HOURS FOR SHARED EMPLOYEES," for the period July 28, 2008 to August 2, 2008, which did not list Mr. Wahl as being assigned any days further evidencing AKAL's unwillingness to abide by the Arbitrator's Award.

19. On or about August 1, 2008, Peter B. Ajalat ("Mr. Ajalat") of Littler Mendleson, attorneys for AKAL, forwarded correspondence to the Law Offices of Frederick K. Brewington, along with attachments, stating "Mr. Wahl must complete [the application materials] to enable the Company to comply with the arbitration decision...." In his correspondence, Mr. Ajalat gave no justification for the need for Mr. Wahl to re-apply for the position for which he was reinstated pursuant to the Arbitrator's Award.

20. On or about August 5, 2008, Mr. Wahl completed and properly executed the application materials provided by AKAL.

21. On or about August 11, 2008, the Law Offices of Frederick K. Brewington forwarded to Mr. Ajalat correspondence enclosing Mr. Wahl's application materials.

22. On or about October 28, 2008, the Law Offices of Frederick K. Brewington forwarded correspondence to Mr. Ajalat, summarizing the fact that Mr. Wahl diligently complied with submitting the application materials "and going through a series of requirements that were not part of the arbitration award," yet "he still has been denied his re-employment." Further, the correspondence stated that AKAL was "in violation of the Contract and the requirements of the binding and agreed upon process entered into by [Mr. Wahl] in good faith."

23. On or about December 2, 2008, Mr. Ajalat responded to the October 28, 2008 correspondence stating that reinstatement of Mr. Wahl's employment is "subject to a suitability

determination by the United States Marshal's [sic] Service (USMS). Mr. Ajalat further states that AKAL had not yet "obtained any suitability determination" and "cannot reinstate employment at this time." In addition, Mr. Ajalat states that "Akal has taken all lawful and necessary steps to facilitate Wahl's reinstatement including forwarding to Wahl, and then processing with the USMS, his application in a timely manner."

24. On or about December 3, 2008, Cheryl Brandt of AKAL forwarded a cover letter to Mr. Seimer attached to a confidential envelope containing a Judicial Security Division Medical Review Form ("Medical Review Form") from the USMS Judicial Security Division charging the CSO Applicant, Mr. Wahl, to instruct his physician to respond to medical questions, conduct medical tests, and forward the results to AKAL. Mr. Wahl signed the cover letter on December 5, 2008, acknowledging receipt of the envelope.

25. In full compliance of the provisions of the Medical Review Form and AKAL's instructions, Mr. Wahl made appointments and was attended by the following healthcare professionals: Dr. Altorki (surgeon) on December 16, 2008, Dr. Melchor (family physician) on December 19, 2008, Dr. Rosen (audiologist) on December 22, 2008, Dr. Palla (cardiologist) on December 23, 2008, and the Stahl Eye Center on January 2, 2009.

26. On or about January 23, 2009, Mr. Wahl received another Medical Review Form again stating that his medical status is "deferred pending further documentation" for lack of a percentage reading for each ear; a result the audiologist neglected to enter onto the original form. At the bottom of the form appeared the words, "All Other Reporting Requirements Have Been Met." The aforementioned percentage readings were entered onto the form and forwarded to AKAL through Mr. Seimer.

27. On or about April 7, 2009, Mr. Wahl received a telephone call indicating that a sealed envelope addressed to him was present at the Central Islip CSO Office. Mr. Wahl went to retrieve the envelope containing a Medical Review Form stating, "Your status is: Medically Qualified." Next, Mr. Wahl asked Mr. Seimer when Mr. Wahl could expect to return to work. Mr. Seimer advised Mr. Wahl that he had received fax correspondence stating that Mr. Wahl was disqualified as a CSO because the background check "resulted in unfavorable information." Mr. Wahl asked for a copy of the fax to which Mr. Seimer stated that he was directed not to allow copies to be made or the contents to be forwarded. The fax correspondence was prepared and signed by Donna M. Jackson, Personnel Security Specialist, United States Marshals Service, Judicial Services Division.

28. On or about April 7, 2009, Mr. Wahl returned home from the Central Islip CSO Office and contacted Mr. Francis requesting further information. Mr. Francis advised him to contact his attorney.

29. On June 5, 2009, Mr. Wahl shipped via United States Postal Service a Freedom of Information Act/Privacy Act Request Letter to: U.S. Marshals Service, Office of General Council [sic], FOI Staff, CS-3, Washington, DC 20530-1000 requesting "a copy of the Background Investigation of me, conducted by the U.S. Marshals Service, for the position of Court Security Officer."

30. On or about August 28, 2008, a Record of Suitability Determination (author and source unknown to Plaintiff), which determines eligibility for employment, was generated stating that Mr. Wahl was unsuitable; that his "Dishonest Conduct is not mitigated. Subject's conduct, [sic] was inappropriate and shows a lack of judgment, lack of candor and raises questions about his reliability, trustworthiness and ability to protect classified information." Mr. Wahl did not become

aware of said document until July 2, 2009 when he received it from the U.S. Department of Justice, United States Marshals Service, Office of the General Counsel, in response to Mr. Wahl's Freedom of Information Act ("FOIA") request after he was informed that he would not be reinstated to his former position for being determined unsuitable for employment purposes.

31. On July 2, 2009, William E. Bordley, Associate General Counsel, FOI/PA Officer of the Office of General Counsel, U.S. Department of Justice, forwarded to Mr. Wahl a redacted copy of a Record of Suitability Determination regarding Plaintiff provided by the United States Marshal Service (USMS), stating that the names and/or information on government employees and third-party individual(s) were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(c). Freedom of Information/Privacy Act Request No. 2009USMS13550 was assigned to this matter.

32. On August 28, 2009, the Law Offices of Frederick K. Brewington sent a letter of appeal via Overnight Mail requesting the redacted information to the Office of Information Policy, United States Department of Justice, 1425 New York Avenue, N.W., Suite 11050, Washington, D.C. 20530-0001.

33. On September 11, 2009, Priscilla Jones, Supervisory Administrative Specialist, Office of Information Policy, U.S. Department of Justice, sent correspondence to the Law Offices of Frederick K. Brewington acknowledging receipt of the appeal and assigning number 09-2677 to the appeal.

34. On or about September 18, 2009, Mr. Wahl applied for a Transportation Officer position with the Geo Group, Inc. in the Queens Private Detention Facility. The GEO Group, Inc. is a Florida based corporation that contracts with the United States Marshal Service throughout the

United States, to house federal detainees and, as necessary, transport them to court appearances where GEO Group Transportation Officers frequently assist Marshal Service Deputies with court room security.

35. On or about September 21, 2009, a background check was conducted by the Geo Group, Inc via Accurate Background, Inc.

36. On or about October 7, 2009, USMS/COTR Security granted conditional approval to Mr. Wahl to perform contract work at the Queens Private Detention Facility ("the Facility").

37. On or about October 16, 2009, the Facility sent Mr. Wahl a letter confirming its offer of employment as a Part Time Transportation Officer for the Transportation Department of the Facility, with an effective employment date of October 16, 2009 to which Mr. Wahl accepted.

38. On January 11, 2010, pursuant to the request of the U.S. Department of Justice, the Law Offices of Frederick K. Brewington forwarded via overnight mail a properly executed authorization releasing any and all records pertaining to Plaintiff, along with a cover letter addressed to Patrick DeKlotz, United States Department of Justice, 1425 New York Avenue, N.W., Suite 11050, Washington, D.C. 20530-0001.

39. On February 5, 2010, Mr. Wahl was granted full approval by the USMS to perform contract work at the Facility, indicating the faultiness of the previous screening resulting in Mr Wahl not being reinstated to his position.

40. On March 1, 2010, Janice Galli McLeod, Associate Director, Office of Information Policy, U.S. Department of Justice, forwarded to the Law Offices of Frederick K. Brewington correspondence affirming USMS's denial of Plaintiff's request for the redacted information, citing 5 U.S.C. § 552(b)(6), 5 U.S.C. § 552(b)(7)(C), and 5 U.S.C. §552a(k)(2).

## AS AND FOR A FIRST COUNT
[Breach of Contract - As to Defendant AKAL]

41. Plaintiff incorporates by reference Paragraphs 1-36, inclusive, of this complaint as if fully set forth.

42. Plaintiff was a member of the Union that entered into a contract with AKAL known as the Collective Bargaining Agreement ("CBA"), whose terms were partly written, partly oral, and partly implied. The terms of the CBA relied on by plaintiff included but were not limited to: "Decision of the Arbitrator - .... The decision of the arbitrator shall be final and binding upon the parties to the Agreement. Any decision shall be complied with, without undue delay after the decision is rendered."

43. It is recognized by the parties to the CBA that (1) if an employee was performing unsatisfactorily, the employee would be disciplined in accordance with Defendant AKAL's progressive disciplinary steps, and (2) employees would be treated fairly and in accordance with the laws of New York; and (3) Plaintiff had a contract of employment for so long as he performed plaintiff's job in a satisfactory manner, and demotion or discharge could only be for good cause proven and then would be carried out only in accordance with the stated written policies of Defendant AKAL.

44. The parties shall make their best efforts to resolve any dispute or grievance on an informal basis.

45. If the dispute or grievance is not resolved on an informal basis, the unsettled matter may be processed to arbitration.

46. After the unsettled matter is heard before an arbitrator, the decision of the arbitrator shall be final and binding upon the parties to the CBA.

47. Any decision by the arbitrator shall be complied with, without undue delay, after the decision is rendered.

48. Defendant AKAL breached its agreement with Plaintiff Wahl by:

   a. Refusing to reinstate plaintiff to his previous position with defendant employer pursuant to the decision of the arbitrator;

   b. Compelling plaintiff to reapply needlessly for a position he had previously held before being terminated in violation of the CBA;

   c. Subjecting plaintiff to a background check for a position for which he already had been cleared by the USMS and held before being terminated in violation of the CBA;

   d. blaming plaintiff for the intolerable working environment created by employee James Werkle;

   e. failing to treat plaintiff in accordance with defendant's stated policies;

   f. terminating plaintiff in breach of the promises made to plaintiff; and

   g. terminating plaintiff without following defendant employer's policies and practices.

49. Defendant AKAL has refused and continues to refuse to allow plaintiff the benefits of the CBA, the Arbitrator's Award, and to perform in the agreed on manner.

50. As a direct, foreseeable, and proximate result of defendant AKAL's breach, plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, and job benefits, and

expenses incurred in the search for comparable employment in an amount not less than $500,000.00, the precise amount of which will be proven at trial.

51. As a further direct and proximate result of defendant AKAL's unlawful conduct, plaintiff has suffered extreme and severe anguish, humiliation, emotional distress, nervousness, tension, anxiety, and depression, the extent of which is not fully known at this time, and the amount of damages caused by defendant's conduct is not yet fully ascertained but in an amount in excess of $16,000.00, the precise amount to be proven at the time of trial. Plaintiff claims this amount together with prejudgment interest of 9% pursuant to CPLR §§ 5001 & 5004, and pursuant to any other provision of law providing for prejudgment interest.

52. Wherefore, plaintiff requests judgment against defendants as set forth in this complaint.

## AS AND FOR A SECOND COUNT
[Breach of The Covenant of Good Faith and Fair Dealing - As to Defendant AKAL]

53. Plaintiff incorporates by reference Paragraphs 1-48, inclusive, of this complaint as if fully set forth.

54. As a result of the employment relationship that existed between plaintiff and defendant employer, the express and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in these implied promises, defendant AKAL promised to act in good faith toward and deal fairly with plaintiff. This requires, among other things, that: (a) each party in the relationship must act with good faith toward the other concerning all matters related to the employment; (b) each party in the relationship must act with fairness toward

the other concerning all matters related to the employment; (c) neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship; (d) defendant AKAL would similarly treat employees who are similarly situated; (e) defendant AKAL would comply with its own representations, rules, policies, and procedures in dealing with plaintiff; (f) defendant AKAL would not terminate plaintiff without a fair and honest cause, regulated by good faith on defendant employer's part; (g) defendant AKAL would not terminate plaintiff in an unfair manner; and (h) defendant AKAL would give plaintiff's interests as much consideration as it gave its own interests.

55. Defendant AKAL's decision not to reinstate plaintiff was wrongful, in bad faith, and unfair, and therefore a violation of defendant AKAL's legal duties. Plaintiff further alleges that defendant AKAL breached the covenant of good faith and fair dealing when it:

(a) repeatedly refused to abide by its own policies when dealing with plaintiff;

(b) repeatedly denied the existence of the contract and the agreements made with plaintiff;

(c) unfairly prevented plaintiff from obtaining the benefits of his employment relationship;

(d) treated similarly situated employees differently by tolerating poor performance by other similarly situated employees;

(e) terminated plaintiff's employment for false reasons and in a manner that was inconsistent with defendant employer's stated policies and practices;

(f) compelled plaintiff to go through application and screening process under the implication that he would be reinstated.

14

56. Defendant AKAL's breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to plaintiff. As a direct and proximate result of defendant AKAL's unlawful conduct alleged in this complaint, plaintiff has lost substantial employment benefits with defendant AKAL, including loss of reputation, lost wages, and other employee fringe benefits in an amount in excess of $516,000.00, the precise amount of which will be proven at trial.

57. As a further direct and proximate result of defendant AKAL's wrongful conduct, plaintiff has suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of economic damages are in excess of $516,000.00, the precise amount of which will be proven at trial.

### THIRD CAUSE OF ACTION
[Fraud - as to Defendant AKAL]

58. Plaintiff incorporates by reference Paragraphs 1-58, inclusive, of this complaint as if fully set forth.

59. Plaintiff believes and therefore avers that Defendant AKAL caused the Plaintiff to forego income and employment and to submit to an unnecessary employment screening process in the belief that Defendant AKAL would abide by the Arbitration Award and reinstate Plaintiff to his former job and employment status. Defendant AKAL acted with the sole purpose and intention of depriving the Plaintiff of his employment, and the Defendant AKAL was motivated by malice.

60. The allegations contained herein constitute fraud by Defendant AKAL.

61. As a result of the malicious acts of Defendant AKAL as alleged herein, the Plaintiff was not reinstated to his former employment with Defendant AKAL pursuant to the Arbitration Award.

62. As a result of not being reinstated to his former employment with Defendant AKAL, the Plaintiff has lot a substantial amount of income and other company benefits, and has also suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of economic damages are in excess of $516,000.00, the precise amount of which will be proven at trial.

## AS AND FOR A FOURTH COUNT
[Negligent Misrepresentation - As to Defendants ERIC HOLDER, and UNITED STATES MARSHAL SERVICE]

63. Plaintiff incorporates by reference Paragraphs 1-63, inclusive, of this complaint as if fully set forth.

64. Defendants ERIC HOLDER, UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICE had an official public duty to conduct an accurate employment screening background check of Plaintiff Wahl.

65. Defendants ERIC HOLDER, UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICE negligently and improperly conducted the employment screening background check of Plaintiff Wahl. As a result of the negligently and improperly conducted employment screening background check of Plaintiff Wahl, Plaintiff Wahl was deemed ineligible to return to his employment as a CSO.

66. The negligent and improper employment screening background check of Plaintiff Wahl by Defendants ERIC HOLDER, UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICE was an actual and proximate cause of Defendant AKAL's decision not to abide by the Arbitration Award and not reinstate Plaintiff Wahl to his former employment.

67. The allegations contained herein constitute negligent misrepresentation of Plaintiff

Wahl's eligibility to be reinstated to his former employment.

68. As a result of the negligent acts of the Defendants ERIC HOLDER, UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICE as alleged herein, Plaintiff Wahl has lost a substantial amount of income and other company benefits, and has also suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of economic damages are in excess of $516,000.00, the precise amount of which will be proven at trial.

## AS AND FOR A FIFTH COUNT
[Tortious Interference With Contract - AS TO DEFENDANTS ERIC HOLDER, and UNITED STATES MARSHAL SERVICES]

69. Plaintiff incorporates by reference Paragraphs 1-69, inclusive, of this complaint as if fully set forth.

70. Plaintiff believes and therefore avers that the Defendants ERIC HOLDER, UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICES caused the Plaintiff to be terminated from the Defendant AKAL through their negligent conduct of the background security check of Plaintiff Wahl, thereby depriving Plaintiff of his employment.

71. The allegations contained herein constitute negligent interference with advantageous relations and interference with an employment contract by the Defendants ERIC HOLDER, THE UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICES.

72. As a result of the negligent acts of the Defendants ERIC HOLDER, THE UNITED STATES OF AMERICA, and UNITED STATES MARSHAL SERVICES as alleged herein, the Plaintiff was denied restoration of his employment with Defendant AKAL.

73. As a result of not being restored to his prior employment with Defendant AKAL, the

Plaintiff has lost a substantial amount of income and other company benefits, and has also suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of economic damages are in excess of $516,000.00, the precise amount of which will be proven at trial.

### REQUEST FOR RELIEF

Wherefore, Plaintiff Edward D. Wahl, respectfully requests this Court for the following relief:

1. Compensatory damages, including lost wages and benefits, severe anguish, humiliation and emotional distress damages, in excess of $516,000.00 and according to proof;

2. Punitive damages;

3. Attorney's fees and costs;

4. Prejudgment interest on all amounts claimed; and

5. Such other and further relief as the court considers just and proper.

### JURY TRIAL DEMANDED

Dated: Hempstead, New York
August 4, 2011

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959